Filed 8/6/26  Arakelyan v. State Farm Mutual Automobile Ins. Co. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| LUCIA ARAKELYAN,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>        Defendant and Respondent. | B339843<br><br>(Los Angeles County Super. Ct. No. 23STCV03863) |


APPEAL from a judgment of the Superior Court of Los Angeles County, Steve Cochran, Judge.  Affirmed.

Law Offices of Armen M. Tashjian and Armen M. Tashjian for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Jennifer Hoffman, Valerie E. Alter, Jeffrey Crowe and Katherine Sample for Defendant and Respondent.

_____

Plaintiff and appellant Lucia Arakelyan (Arakelyan) appeals from a judgment of dismissal entered in favor of defendant and respondent State Farm Mutual Automobile Insurance Company (State Farm) following State Farm's successful demurrer.  We affirm.

## BACKGROUND

### I.  Facts[1]

On March 2, 2020, a car driven by Monica Toranyan (Toranyan) struck Arakelyan's car and then collided with an unoccupied parked car owned by Levon Tovmasian (Tovmasian). Arakelyan suffered bodily injuries and her car was damaged. "All involved parties in this accident were of Armenian ethnicity."

Two days after the accident, an attorney representing Arakelyan, Oganes Sachmanyan (Sachmanyan), initiated a claim with Arakelyan's automobile insurance carrier, Mercury Insurance Company (Mercury).  Mercury settled the property damage portion of Arakelyan's claim.

State Farm insured the car driven by Toranyan.  On March 27, 2020, State Farm informed Sachmanyan, without

---

[1]     The facts summarized in this section are taken from the allegations in the complaint and attached exhibits.  (See *Gordon v. Law Offices of Aguirre & Meyer* (1999) 70 Cal.App.4th 972, 975, fn. 2 (*Gordon*); *Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627.)  "We accept as true all properly pleaded allegations without concern for proof problems. [Citation.]"  (*Gordon, supra*, at p. 975, fn. 2.)

explanation, that the claim related to the accident had been reassigned to its special investigative unit.  Arakelyan alleges that "[t]he underlying claim was referred to the [special investigative unit] by State Farm because all involved parties were of Armenian ethnicity."

In January 2021, State Farm filed an action for declaratory relief against Arakelyan, Toranyan, and Tovmasian, among others, alleging that "the parties to the loss ha[d] misrepresented the facts surrounding the alleged accident[,]" which "appear[ed] to have been a collusive event . . . ."  In April 2021, State Farm "enter[ed] the defaults of its insureds" and Arakelyan.  In January 2022, Arakelyan obtained relief from default and was dismissed from State Farm's declaratory relief action.

## II.  Procedural History

### A.  *The complaint*

In February 2023, Arakelyan filed a complaint asserting causes of action against State Farm, Mercury, and Michael Yoder (Yoder), an adjuster employed by Mercury, for violation of the Unruh Civil Rights Act (Civ. Code, § 51 et seq.), violation of the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200 et seq.), and negligent misrepresentation.[2]

### B.  *Demurrers*

State Farm demurred under Code of Civil Procedure section 430.10, subdivision (e), to each cause of action asserted against it.  State Farm argued that Arakelyan's Unruh Civil Rights Act claim was barred by the applicable statute of limitations and the litigation privilege; Arakelyan lacked standing to bring a UCL claim and sought unavailable remedies;

---

[2]     Arakelyan also asserted other causes of action against Mercury and Yoder.

3

and Arakelyan failed to allege that she detrimentally relied on any misrepresentation made by State Farm. Mercury and Yoder also filed a demurrer to the Unruh Civil Rights Act cause of action on the ground that Arakelyan did not sufficiently allege discriminatory intent. Arakelyan opposed the demurrers.

The trial court held a hearing on both demurrers on March 27, 2024. As relevant here, the court sustained State Farm's demurrers to the Unruh Civil Rights Act, UCL, and negligent misrepresentation causes of action with leave to amend. The court found that Arakelyan had not sufficiently alleged the requisite discriminatory intent to support a claim under the Unruh Civil Rights Act, as had been argued by Mercury. Arakelyan "had not sufficiently established an 'injury-in-fact' necessary to establish her standing to bring a claim under the UCL." The negligent misrepresentation cause of action was deficient because Arakelyan "failed to specifically allege any statement or misrepresentation by a State Farm representative on which she relied to her detriment."

C. *Judgment of dismissal and appeal*

Arakelyan did not file an amended complaint. Pursuant to Code of Civil Procedure section 581, subdivision (f)(2), the trial court entered a judgment of dismissal as to State Farm. The judgment was subsequently amended to include an award of costs against Arakelyan. Arakelyan filed a timely notice of appeal.

D. *Settled statement*

No court reporter was present at the demurrer hearing on March 27, 2024. Arakelyan submitted a proposed settled statement for use on appeal. In response, State Farm filed its own proposed version of the settled statement. The court held a hearing on the settled statement on February 7, 2025. Neither

4

Arakelyan nor her attorney appeared at that hearing. The trial court selected State Farm's version of the settled statement and certified that it was an accurate summary. In his supporting declaration, Arakelyan's attorney accepted "fault" for not appearing at the February 7, 2025, hearing due to his "erroneous calendaring[.]" The court denied the motion for reconsideration.

## DISCUSSION

### I. The Trial Court's Adoption of State Farm's Version of the Settled Statement Did Not Violate Due Process

As an initial matter, we consider Arakelyan's argument that the trial court violated due process by adopting State Farm's version of the settled statement of the demurrer hearing over Arakelyan's version.

"A settled statement is a summary of the superior court proceedings approved by the superior court." (Cal. Rules of Court, rule 8.137(a).) A settled statement may be used by an appellant "as the record of the oral proceedings in the superior court" if the proceedings were not reported by a court reporter. (Cal. Rules of Court, rule 8.137(b)(1)(A).) Where the appellant "fails to convince the trial judge that [her] proposed statement accurately reflects the proceedings in question, the action of the judge who heard and tried the case must be regarded as final since his familiarity with the trial and knowledge of what took place make him specially qualified to determine what the evidence and the proceedings were." (*Cross v. Tustin* (1951) 37 Cal.2d 821, 826 (*Cross*).) The trial court may not, however, exercise its power over the record in an arbitrary manner. (*St. George v. Superior Court of San Mateo County* (1949) 93 Cal.App.2d 815, 817; see also *Randall v. Mousseau* (2016)

5

2 Cal.App.5th 929, 934; *Eisenberg v. Superior Court of Los Angeles County* (1956) 142 Cal.App.2d 12, 18–19.)

Arakelyan has not established any abuse of the trial court's discretion or violation of due process as it relates to the settled statement. Arakelyan and State Farm each submitted a proposed settled statement regarding the demurrer hearing. The court held a hearing on the matter and selected State Farm's version to certify over Arakelyan's version. Arakelyan contends that it was error for the court to rule on the settled statement when her attorney "was unable to appear at the February 7, 2025, hearing due to a medical emergency[.]" The record belies this representation. In his sworn declaration, Arakelyan's attorney stated that he "mistook" the date of the hearing and admitted that "[t]his erroneous calendaring was [his] fault." While the declaration also stated that he "underwent surgery[,]" he admitted that the surgery did not occur until February 13, 2025, almost one week after the hearing that he miscalendared.

Nor does Arakelyan demonstrate that the trial court abused its discretion by denying her motion for reconsideration under Code of Civil Procedure section 1008, subdivision (a). (See *Schep v. Capital One, N.A.* (2017) 12 Cal.App.5th 1331, 1338 [standard of review].) Arakelyan merely asserts that the court had inherent authority to reconsider its order on the settled statement, but she fails to point to anything arbitrary, capricious, or patently absurd about the court's ruling. We also note that Arakelyan never filed a motion under Code of Civil Procedure section 473, subdivision (b), based on attorney error.

For the first time in her reply brief, Arakelyan argues that she filed a timely request for an electronic recording of the hearing on the settled statement per Los Angeles Superior Court

6

General Order 2024-GEN-011-00.  Similarly, Arakelyan argues in reply that "settled statements are inadequate substitutes for verbatim records."  Arguments raised for the first time in reply are waived.  (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 799.)  Regardless, the argument has no merit.  Electronic recording is only available for proceedings that implicate fundamental rights or liberty rights, namely, family law, probate, and civil contempt proceedings.  (L.A. Sup. Ct. Gen. Order 2024-GEN-011-00 (Sept. 5, 2024) at pp. 13, 15, 16, 19.)  Moreover, electronic recording is only available when the requestor has been unable to secure the presence of a private court reporter because one was not reasonably available or on account of the requestor's reasonable inability to pay the fee.  (*Id.* at p. 20.)  There is nothing in the record suggesting that Arakelyan was unable to secure a court reporter.  The record does not indicate that Arakelyan had an approved fee waiver on file, which would have entitled her to a court-employed reporter at no charge.

Based upon the foregoing, we accept the settled statement certified by the trial court here "as final."  (*Cross, supra*, 37 Cal.2d at p. 826.)  We disregard arguments made by Arakelyan on appeal that are only supported by record citations to her proposed version of the settled statement.

## II.  The Trial Court Properly Sustained State Farm's Demurrer to the Unruh Civil Rights Act Cause of Action

The trial court sustained with leave to amend State Farm's demurrer to the Unruh Civil Rights Act cause of action on the ground that Arakelyan had not sufficiently alleged discriminatory intent.  Arakelyan contends that (1) this ruling violated due process because State Farm never raised an

7

argument regarding discriminatory intent, and (2) accepting Arakelyan's well-pleaded allegations as true, she adequately pled discriminatory intent.

### A. *Standard of review*

We review an order sustaining a demurrer de novo. (*SI 59 LLC v. Variel Warner Ventures, LLC* (2018) 29 Cal.App.5th 146, 152.) Accepting the factual allegations as true and applying a reasonable interpretation, we determine whether the complaint states facts sufficient to constitute a cause of action. (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 761–762.) "Typically, the failure to amend a complaint constitutes an admission that the plaintiffs have stated the case as strongly as they could have, and no additional facts could be alleged to cure the defect. [Citation.]" (*Shaw v. Los Angeles Unified School Dist.* (2023) 95 Cal.App.5th 740, 753 (*Shaw*).)

### B. *No violation of due process*

Arakelyan claims that she was deprived of notice and an opportunity to be heard, in violation of due process, when the trial court sustained State Farm's demurrer to the Unruh Civil Rights Act cause of action based on an argument raised only by Mercury. We disagree.

State Farm demurred to the Unruh Civil Rights Act cause of action on the ground that it did "not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10, subd. (e).) Although State Farm did not specifically argue in its memorandum of points and authorities that the complaint lacked sufficient allegations of discriminatory intent, State Farm expressly raised the issue in its meet and confer letter to Arakelyan's counsel and Mercury also made the argument in connection with its demurrer. Presumably because she had

8

notice that the argument could apply to State Farm, Arakelyan discussed the discriminatory intent argument in her opposition to State Farm's demurrer.  In the opposition, Arakelyan contended that she had "adequately allege[d that] State Farm engaged in intentional discrimination in violation of the Unruh [Civil Rights] Act" and pointed to her allegations "that State Farm referred her claim to its [special investigative unit] solely because she is of Armenian descent [citation], and continue[d] to deny her policy benefits on this discriminatory basis [citation]."

Arakelyan's discussion of the discriminatory intent element in her opposition to State Farm's demurrer is inconsistent with her contentions on appeal that she was "ambushed" by the trial court's application of Mercury's argument to State Farm and that she "had no opportunity to address" the issue.  Even if she was surprised by the court's reliance on discriminatory intent to sustain State Farm's demurrer, nothing in the record suggests that she objected based on the lack of notice or requested a continuance of the hearing and leave to file supplemental briefing.  She thus forfeited the claim of error on appeal.  (See *Carlton v. Quint* (2000) 77 Cal.App.4th 690, 697 [claim of inadequate service or notice of motion waived where plaintiff opposed the motion, argued at the hearing, never requested a continuance, and never made a claim of prejudice to the trial court].)

Citing *People v. Ramirez* (1979) 25 Cal.3d 260 (*Ramirez*) and *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243 (*Nazir*), Arakelyan asserts that "California courts have consistently held that sustaining a demurrer on grounds not raised in the moving papers deprives the opposing party of notice and an opportunity to be heard."  Neither *Ramirez* nor *Nazir*

9

stand for this proposition. *Ramirez* considered the scope of the California Constitution's due process clauses in the context of a criminal defendant's exclusion from a prison treatment program. (*Ramirez*, *supra*, 25 Cal.3d at pp. 264–265.) *Nazir* is an inapposite summary judgment case that does not consider the propriety of granting a motion on grounds not raised in moving papers. (See *Nazir*, *supra*, 178 Cal.App.4th at pp. 248–250.) " ' "[C]ases are not authority for propositions not considered." ' [Citation.]" (*B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 11.)

"[T]he precise dictates of due process are flexible and vary according to context. [Citations.]" (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.) We conclude that Arakelyan was afforded adequate process. She was informed of the statutory basis for State Farm's demurrer; she substantively addressed the intentional discrimination argument as it pertained to State Farm in her opposition; she had the opportunity to orally argue the issue at the demurrer hearing; and she was granted leave to amend the complaint. Nothing in the record suggests, as Arakelyan argues, that the trial court exceeded its authority or departed from its role as a neutral arbiter.

**C. *Insufficient allegations of discriminatory intent***

The Unruh Civil Rights Act mandates that all persons "are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Civ. Code, § 51, subd. (b).) Through its enactment, "the Legislature intended to ban *all* forms of arbitrary discrimination in public accommodations. [Citation.]"

10

(*Koebke v. Bernardo Heights Country Club* (2005) 36 Cal.4th 824, 840.)

To state an Unruh Civil Rights Act claim, "a plaintiff must allege the defendant is a business establishment that intentionally discriminates against and/or denies plaintiff full and equal treatment of a service, advantage, or accommodation based on plaintiff's protected status. [Citations.] Intentional discrimination requires ' "willful, affirmative misconduct." ' [Citation.] And plaintiffs must allege more than the disparate impact of a facially neutral policy on a particular protected group. [Citation.]" (*Liapes v. Facebook, Inc.* (2023) 95 Cal.App.5th 910, 922; see also *Sunrise Country Club Assn. v. Proud* (1987) 190 Cal.App.3d 377, 381 [the Unruh Civil Rights Act "does not purport to prohibit all differences in treatment or accommodations offered, only unreasonable, arbitrary or invidious discrimination"].)

Here, the complaint alleged that the collision took place in an area with a large Armenian-American population; State Farm referred the underlying claim to the special investigative unit "because all involved parties were of Armenian ethnicity;" and State Farm discriminates against policyholders that are of Armenian ancestry by refusing to pay benefits. However, the complaint alleges no *facts* in support of these allegations. (See *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 808 ["[C]onclusory allegations will not withstand demurrer."].) "The bare possibility of discrimination premised on speculation, without any underlying factual basis, is insufficient to state a claim under the Unruh Civil Rights Act. [Citation.]" (*Dallas and Lashmi, Inc. v. 7-Eleven, Inc.* (C.D. Cal. 2015) 112 F.Supp.3d 1048, 1063.) Because the demurrer was properly sustained on

11

this basis, we need not reach State Farm's argument that the claim is barred by the applicable statute of limitations.

## III. The Trial Court Properly Sustained State Farm's Demurrers to the UCL and Negligent Misrepresentation Causes of Action

Arakelyan contends that the trial court erred by applying a discriminatory intent requirement to her UCL and negligent misrepresentation causes of action. This assertion is unsupported by the record.

Arakelyan quotes the trial court's statement in its order sustaining State Farm's demurrer that she "did not sufficiently allege discriminatory intent." Arakelyan ignores that this statement was made solely in the context of the ruling on the demurrer to the Unruh Civil Rights Act cause of action. It has no bearing on the other causes of action.

The trial court sustained the demurrer to the UCL cause of action based on Arakelyan's lack of standing and the demurrer to the negligent misrepresentation cause of action based on the failure to specify a misrepresentation by State Farm upon which Arakelyan detrimentally relied. By failing to tailor her appellate arguments to the actual grounds upon which the court made its rulings, Arakelyan has forfeited any claim of error on appeal as to those causes of action. (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived"].)

## IV. Leave to Amend Was Not Illusory

Finally, Arakelyan argues that leave to amend her complaint was "illusory" because she did not know the basis for the trial court's ruling and "could not know what to amend." The

12

record does not support this claim. The order sustaining the demurrer, coupled with the court's explanation at the demurrer hearing, made clear what the court identified as the pleading deficiencies for each cause of action asserted against State Farm. Arakelyan elected not to amend her complaint to make clear: (1) how State Farm knew the parties to the collision were of Armenian descent, for example, based on having clearly Armenian surnames or some other basis; (2) how she established an "injury-in-fact" necessary to establish standing to assert a UCL claim; and (3) what misrepresentation State Farm made and how she detrimentally relied on that misrepresentation. Arakelyan's failure to take advantage of this opportunity is fatal to her claims on appeal.

## DISPOSITION

The judgment is affirmed.  State Farm is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


GOORVITCH, J.


We concur:


LUI, P. J.


CHAVEZ, J.